# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ROGER K. WASHINGTON,

v.                                                   Civil Case No. GLR-17-2897

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,[1]

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 3]. Plaintiff Roger K. Washington, who proceeds *pro se*, filed this appeal of the denial of his claim for benefits by the Social Security Administration ("the Commissioner"). [ECF No. 1]. Although he did not formally file a Motion for Summary Judgment, Mr. Washington filed documents consisting of some medical records from 2017 and an asbestos certificate proving that he worked in the 1980s. [ECF No. 14]. The Commissioner filed a Motion for Summary Judgment on April 30, 2018. [ECF No. 15]. On May 1, 2018, the Clerk's Office sent a Rule 12/56 letter to Mr. Washington, advising him of the potential consequences of failing to oppose the Commissioner's Motion. [ECF No. 16]. On May 17, 2018, Mr. Washington filed a one-page Opposition to the Commissioner's Motion. [ECF No. 17]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will recommend that the Court grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

In April, 2013, Mr. Washington filed his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of March 1, 2013. (Tr. 161, 163). His claims were denied initially and on reconsideration. (Tr. 108-112, 114-117). On April 19, 2016, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 33-63). The ALJ issued an unfavorable decision on July 19, 2016. (Tr. 14-32). The Appeals Council denied Mr. Washington's request for further review, (Tr. 1-6), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, during the relevant time frame, Mr. Washington suffered from the severe impairment of "a vision disorder / retinal hemorrhage and a pain disorder." (Tr. 19). Despite these impairments, the ALJ determined that Mr. Washington retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with occasional climbing (of ramps and stairs only), balancing, stooping, crouching, crawling, and kneeling; no balancing on uneven surfaces; must avoid hazards such as unprotected heights, moving machinery, and driving; not requiring peripheral vision for safety; and not requiring normal depth perception or binocular vision.

(Tr. 22). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were several jobs existing in significant numbers in the national economy that Mr. Washington could perform. (Tr. 27). Thus, the ALJ concluded that Mr. Washington was not disabled. (Tr. 27-28).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review

of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

At step one, the ALJ found in Mr. Washington's favor, concluding that he had not engaged in substantial gainful activity since his application date. (Tr. 19). At step two, the ALJ found the above-listed severe impairments, and found that any other alleged impairments—specifically hypertension and generalized anxiety disorder — were not severe. (Tr. 19-20).

At step three, the ALJ determined that Mr. Washington did not have an impairment or combination of impairments that met or medically equaled the criteria set forth in any listings. (Tr. 22). Specifically, the ALJ gave "[s]pecial consideration" to Mr. Washington's vision impairment and determined that it did not satisfy any of the Listings under Section 2.00. *Id.; see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.00. In light of the ALJ's findings, I have carefully reviewed the record, and I agree that no listings are met.

In determining the RFC assessment, the ALJ summarized Mr. Washington's allegations about his inability to work, and found that Mr. Washington's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 23). In particular, the ALJ determined that, despite Mr. Washington's alleged disability due to a vision impairment and musculoskeletal pain, "the record documents very little medical treatment for either of these conditions and does not support a finding that he is precluded from a range of light work." *Id.* Elaborating, the ALJ considered Mr. Washington's ophthalmologist records, including a March

2013 initial visit with Dr. Ron Gutmark, where Mr. Washington complained of blurred vision in his right eye, but denied the presence of any pain and explained that he was wearing an eye patch. (Tr. 23, 257). Dr. Gutmark diagnosed Mr. Washington with vitreous hemorrhage in the setting of sickle cell trait, with likely sickle cell retinopathy, and advised Mr. Washington to keep his head elevated while sleeping and to seek treatment from a primary care physician. (Tr. 23, 258-59). The ALJ further noted, however, that at a follow-up appointment with Dr. Jessica Chang one week later, Mr. Washington admitted that, despite being advised to keep his head elevated while sleeping, he "usually ended up sleeping vertically" and was not taking any medication. (Tr. 24, 263). Like Dr. Gutmark, Dr. Chang determined that Mr. Washington had vitreous hemorrhage, advised him to sleep upright, to seek blood testing regarding sickle cell disease, and to return for a follow up appointment in two to three weeks. (Tr. 24, 264). Despite Dr. Chang's advice, there are no records of any subsequent ophthalmology appointments. (Tr. 24).

The ALJ also thoroughly considered, and gave significant weight to, the opinion of Mr. Washington's consultative ophthalmology examiner, Dr. Allan Jensen, because it was consistent with Mr. Washington's ophthalmology records *See* (Tr. 24). Dr. Jensen again concluded that Mr. Washington's decrease in vision in his right eye was the result of a hemorrhage caused by sickle cell retinopathy. (Tr. 24, 274-75). Again, Mr. Washington "denied [eye pain and] any related treatment or use of eye drops, explaining that he was simply waiting for the blood in his eye to reabsorb." (Tr. 24, 274). Dr. Jensen further diagnosed Mr. Washington with right vitreous hemorrhage and sickle cell and found a "moderate visual deficit" because "he was temporarily uniocular[,] [] would miss his depth perception[,] and [would] have trouble seeing to the right." (Tr. 24, 275). Further, Dr. Jensen concluded that Mr. Washington may require

4

vitrectomy and laser photocoagulation in the future. (Tr. 24, 275). In light of these opinions and Mr. Washington's own complaints regarding his eye, the ALJ stated that he "fully accounted for [Mr. Washington's] right eye vision problems in the [RFC] assessment[.]" (Tr. 24).

Next, in considering Mr. Washington's complaints of musculoskeletal pain, the ALJ cited to Mr. Washington's Mercy Medical Center Emergency Room ("Mercy ER") visit and two primary care visits in 2014. (Tr. 24-25). The Mercy ER records demonstrate, that despite Mr. Washington's complaints of shoulder, knee, and back pain attributable to an old sports injury, he: (1) exhibited no acute distress; (2) underwent a shoulder examination, which revealed normal results other than mild pain with range of motion; (3) underwent a back examination, which revealed mild tenderness, but no spasm, and normal ambulation, full strength, intact sensation throughout, and a negative straight leg raise. (Tr. 24-25, 279-80). Moreover, Mr. Washington's primary care records also demonstrate that he exhibited no acute distress, peripheral edema, or musculoskeletal abnormalities and that his physical assessment was noted to be "benign." (Tr. 25, 300). Finally, though Mr. Washington claimed to have been seeing a pain specialist, Dr. David Maine, the ALJ explained that a 2016 statement from Dr. Maine's office cited having no records related to Mr. Washington for the time-period searched (March 2013 through May 19, 2016). (Tr. 25, 335). Despite the records supporting a finding that Mr. Washington's physical assessment was benign, the ALJ, nonetheless, considered Mr. Washington to have a severe pain impairment and accounted for it in the exertional and postural limitations of his RFC.[2] (Tr. 25).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is

---

[2] The medical records that Mr. Washington submitted from 2017 [ECF No. 14] post-date the ALJ's 2016 opinion and, therefore, could only be relevant to a new application for benefits.

5

other evidence that may support Mr. Washington's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, I find the ALJ's RFC determination was supported by substantial evidence.

Continuing at step four, the ALJ found that Mr. Washington would not be able to perform his past relevant work as a logistics specialist/inventory clerk. (Tr. 26). Further, Mr. Washington's work as an asbestos handler in the 1980s [ECF No. 14] would have been too distant to count as past relevant work. At step five, the ALJ posed a hypothetical question to the VE to determine whether a person with Mr. Washington's RFC would be able to find work. (Tr. 27, 59-62). The VE cited several jobs in response to that hypothetical, including "cleaner," "ticket seller," and "cafeteria attendant," and the ALJ relied on that VE testimony in his opinion. (Tr. 27); *see* (Tr. 64-66). Accordingly, I find that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 15], and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14)

days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: June 8, 2018

/s/
Stephanie A. Gallagher
United States Magistrate Judge